UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FRANCISCO JAVIER CONTRERAS DURAN,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; TODD M. LYONS, in his official capacity as Acting Director of U.S Immigration and Customs Enforcement; PATRICK DIVVER in his official capacity as the San Diego Field Office Director of U.S Immigration and Customs Enforcement and Removal Operations, Christopher J. LAROSE, in his official capacity as Warden of Otay Mesa Detention Center,

Defendant.

Case No.: 26CV6307-GPC(VET)

**ORDER GRANTING PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

**[Dkt. No. 4.]**

On November 5, 2026, Plaintiff filed an ex parte motion for temporary restraining order. (Dkt. No. 4.) Defendants filed an opposition on November 9, 2026. (Dkt. No. 7.) Plaintiff filed a reply on November 10, 2026. (Dkt. No. 11.) A hearing was held on

November 13, 2026. Based on the briefs, the parties' arguments and the reasoning below, the Court GRANTS Plaintiff's ex parte application for temporary restraining order.

**Background**

Plaintiff Francisco Javier Contreras Duran ("Plaintiff" or "Mr. Contreras Duran") is a 53-year old citizen and national of Mexico and currently detained at the Otay Mesa Detention Center. (Dkt. No. 1, Compl. ¶¶ 13, 30.) When he was about seven years old, his father passed away and in order to help his single mother with eleven children, he started to work by gathering fire sticks in exchange for food. (Dkt. No. 1, Compl., Ex. A, Contreras Duran Decl. in support of I-914 application ¶ 3 at 55.[1]) Around 1989 when he was around 16 years old, he unlawfully entered the United States to seek better paid work to help his family. (*Id.* ¶ 2 at 55; Dkt. No. 1, Compl. ¶ 30.) In 2008, he returned to Mexico due to his mother's death. (Dkt. No. 1, Compl., Ex. A, Contreras Duran Decl. in support of I-914 application ¶ 4 at 55.) While at his hometown, he was physically attacked by several men, a gun was put to his head and was hit by the gun which left him bleeding requiring medical attention and left a permanent scar. (*Id.* ¶¶ 5-7 at 55-56.) He also suffered a fractured finger. (*Id.* ¶ 6 at 55.) Plaintiff managed to escape by running away. (*Id.*)

Plaintiff attempted to return to the United States in November 2008. (*Id.* ¶¶ 9-10 at 56.) On November 5, 2008, he presented himself at the San Ysidro Port of Entry and was charged with making a false claim of citizenship and was returned to Mexico. (Dkt. No. 1, Compl., Ex. A at 36; *id.*, Ex. B, Contreras Duran Decl., in support of I-192 application ¶ 11 at 76; Dkt. No. 4, TRO at 141.) On November 8, 2026, Plaintiff made another attempt to enter using a document that was fake, was charged and was returned to Mexico. (Dkt. No. 1, Compl., Ex. A at 36; Dkt. No. 4, TRO at 142.) He recalls he was

[1] Page numbers are based on the CM/ECF pagination.

given a 10 year bar. (Dkt. No. 1, Compl. Ex. B, Contreras Duran Decl., in support of I-192 application ¶ 11 at 77.) On his third attempt, he hired a human smuggler or "coyote" to take him into the United States. (Dkt. No. 1, Compl., Ex. A, Contreras Duran Decl. in support of I-914 application ¶ 10 at 56.) During his transport to the United States, he became a victim of human trafficking. (Dkt. No. 1, Compl., Ex. A, Contreras Duran Decl. in support of I-914 application ¶¶ 10-44 at 56-60.) He has remained in the United States since then. (Dkt. No. 1, Compl., Ex. B, Contreras Duran Decl., in support of I-192 application ¶ 12 at 77.)

While in the United States, Plaintiff learned to install pools and became a self-employed contractor who employed workers. (Dkt. No. 1, Compl. ¶ 31.) He has lived in El Cajon, California for more than 30 years and maintained a household with his partner of more than 20 years and raised two step-children. (*Id.*) He has no criminal record. (*Id.* ¶ 32.)

On October 21, 2026, Plaintiff was driving to work when he was stopped by what appeared to be law enforcement agents. (*Id.* ¶ 33.) On information and belief, the arresting officers did not present Mr. Contreras Duran with an administrative or judicial arrest warrant, a Notice to Appear or any other document authorizing his arrest. (*Id.* ¶ 34.) After being arrested, he was taken into custody at the Otay Mesa Detention Center. (*Id.* ¶ 35.) When his counsel interviewed Plaintiff at the detention facility, it became apparent he was a victim of a severe form of human trafficking as defined under 8 U.S.C. § 1101(a)(15)(T) due to the abuse he suffered during his last return to the United States in 2008 and after. (*Id.* ¶ 36.) As such, counsel prepared an Application for T Nonimmigrant Status ("T-visa application"), or Form I-914, for Plaintiff which was mailed to USCIS on October 30, 2026 and received by USCIS on November 4, 2026. *(Id.* ¶ 37; *id.*, Exs. A & B.) Plaintiff also submitted a Form I-192 application for advance permission to enter as a nonimmigrant. (Dkt. No. 1, Compl., Ex. B at 45.)

Plaintiff's removal was scheduled for the early morning of Friday, October 31, 2026 and he was taken to the airport in Los Angeles. (*Id.* ¶ 41.) During his detention,

Plaintiff expressed to ICE officer that he feared returning to Mexico; however, ICE claimed, in an email to Plaintiff's counsel on the morning of October 30, 2026 that Plaintiff "never mentioned anything about wanting a reasonable fear interview." (*Id.* ¶ 44.) When counsel reiterated Plaintiff's well-founded fear of returning to Mexico and requested that the reasonable fear process be followed under 8 C.F.R. § 208.31, ICE confirmed that Plaintiff will be removed from the deportation flight and provided a reasonable fear interview. (*Id.* ¶¶ 41, 45.) Plaintiff's counsel is unaware whether the reasonable fear interview has been scheduled and Plaintiff still remains at risk that Defendant may try to execute a reinstated removal order without first complying with the applicable fear procedures. (*Id.* ¶ 46.) Upon information and belief, Plaintiff claims that DHS has reinstated or attempted to reinstate a prior removal order because despite counsel's request for a copy of Form I-871, Notice of Intent/Decision to Reinstate Prior Order, ICE has refused to provide the document and directed her to submit a Freedom of Information Act Request. (*Id.* ¶ 40.)

On October 31, 2026, Plaintiff's counsel emailed ICE a copy of the T-visa application, explained that he is a member of the *ICWC v. Noem*[2] "Pending Petition" class and expressly requested that ICE consider Plaintiff's application and the procedural protections provided by *ICWC v. Noem* in making its enforcement decision. (*Id.* ¶ 38.) On information and belief, ICE has not undertaken an individualized consideration of Plaintiff's T-visa application nor afforded the humanitarian protections offered by the restored victim-centered enforcement framework per *ICWC v. Noem*. (*Id.* ¶ 43.)

On November 4, 2026, Plaintiff filed a complaint seeking declaratory and injunctive relief alleging Defendants have violated the Administrative Procedure Act ("APA") for failing to comply with the nationwide preliminary injunction issued in *ICWC v. Noem* and failing to comply with the fear-screening procedures. (Dkt. No. 1,

---

[2] *Immigr. Ctr. for Women and Children v. Noem*., 351 F.R.D. 324 (C.D. Cal. 2026)

Compl. ¶¶ 47-61.) Plaintiff also alleges Defendants have violated Plaintiff's Fifth Amendment procedural due process rights for failing to provide meaningful consideration of Plaintiff's T-visa application including deferred enforcement absent exceptional circumstances under the preliminary injunction in *ICWC v. Noem* and for failing to provide him with a reasonable fear-screening process. (*Id.* ¶¶ 62-69.) On November 5, 2026, Plaintiff filed the instant ex parte motion for temporary restraining order which is fully briefed. (Dkt. Nos. 4, 7, 11.)

**Discussion**

**A. Jurisdiction**

Defendants argue Plaintiff's claim for injunctive relief is barred under 8 U.S.C. § 1252(g) because a request to stay a reinstated removal order is inextricably linked to the removal itself; instead, they contend Plaintiff should file a request for an administrative stay of removal under 8 C.F.R. § 241.6. (Dkt. No. 7 at 6.) Plaintiff replies that he is not seeking a review of a removal order or discretionary enforcement decision but his request is a collateral challenge seeking the status quo while the Court determines whether Defendants have failed to comply the preliminary injunction issued in *ICWC v. Noem*, and to follow the regulations governing the reasonable fear process. (Dkt. No. 11 at 7-8.)

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien[.]" 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482. Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). This section does not apply to "general collateral challenges to unconstitutional practices and policies used by the agency." *Id.* (internal quotation mark and citation omitted).

At the hearing, Defendants acknowledged there is a reinstated removal order. In this case, Petitioner is not challenging the removal order itself, or ICE's discretion on when or how to execute the removal order. Rather, Plaintiff challenges the government's failure to perform a legally required, non-discretionary duty to obey the preliminary injunction issued in *ICWC v.Noem,* and to follow its own regulations governing the reasonable fear process. *See Tenelema v. Freden*, 1:25-CV-0902-MAV, 2025 WL 3514099, at *3 (W.D.N.Y. Dec. 8, 2025) (citing *R.O.A. v. Edlow*, No. 2:25-CV-723, 2025 WL 3210930, at *6 (D. Vt. Sept. 30, 2025) ("Because Petitioner challenges whether ICE has the authority to remove him during the pendency of his applications, not ICE's discretionary choice to remove him [at a particular time and place], § 1252(g) does not strip the court of jurisdiction to hear Petitioner's claim.").

Further, even though 8 C.F.R. § 241.6 provides for an administrative stay of removal, Defendants point to no legal authority that seeking an administrative stay of removal is a prerequisite to Plaintiff seeking a stay with the Court. Further, a denial of an administrative stay is not subject to judicial review, 8 C.F.R. § 241.6(b), and based on Plaintiff's counsel's experience, all her fifteen requests for administrative stays since May 2025 have been denied. Accordingly, the Court concludes that Plaintiff's claim for injunctive relief is not barred by 8 U.S.C. § 1252(g).

**B. TRO Legal Standard**

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's

favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and the moving party bears the burden of meeting all four *Winter* prongs. *See DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

Plaintiff argues that all four factors support relief of a temporary restraining order enjoining Defendants from removing him before the Court can adjudicate his claims. Defendants respond only that the TRO should be denied on procedural grounds because Plaintiff has not demonstrated immediate, irreparable harm.

**C. Likelihood of Success on the Merit – APA Claim**

Plaintiff argues that he has shown a likelihood of success that his claim that ICE's continued pursuit of his removal during the pendency of his T-visa application violates the APA.[3] (Dkt. No. 4 at 4-6.)

Under the APA, a reviewing "court shall (1) compel agency action unlawfully withheld of unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be-- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[]." 5 U.S.C. § 706(1) & (2)(A).

In May 2026, the U.S. District Court for the Central District of California provisionally certified three classes of individuals including a "Pending Petition Class" which includes "All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement." *ICWC*, 351 F.R.D. at 367, 378. The court also addressed a motion for preliminary injunction as to the Trump Administration's 2025 Guidance.

---

[3] Plaintiff also argues that ICE's continued pursuit of his removal during the pendency of his T-visa application violates the due process clause of the Fifth Amendment. However, Plaintiff has not addressed factors in *Mathews v. Elridge,* 424 U.S. 319 (1976) in support of his procedural due process claim. Plaintiff shall address the *Mathews* analysis in his reply.

Two prior ICE policies, 2011 Policy and 2021 Directive "established that ICE policy was to refrain from immigration enforcement against persons with pending petitions for victim-based benefits, including by releasing them from detention; identifying persons with pending petitions; seeking expedited preliminary adjudications of their petitions from USCIS; deferring to USCIS preliminary adjudications; and granting administrative stays of removal." *ICWC,* 351 F.R.D. at 353-54. In 2025, the Trump Administration issued the 2025 Guidance that "rescinded and superseded" the 2011 Policy and 2021 Directive, and eliminated the "presumption of protection from immigration enforcement for petitioners for victim-based benefits and replac[ed] it with a presumption of enforcement subject to narrow limitations." *Id*. at 354. The district court issued a preliminary injunction staying "the 2025 Guidance, including its rescission of prior policies. This stay applies in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes." *Id.* at 397.

Plaintiff claims he is a member of the nationwide Pending Petition Class certified in *ICWC* as he has a pending T-visa application with USCIS and is protected from adverse immigration enforcement action absent "exceptional circumstances." (Dkt. No. 4 at 5-6.) Because Plaintiff does not fall under an "exceptional circumstance" defined by the ICE Directive 11005.3[4], he claims that ICE's removal of Plaintiff without compliance with the preliminary injunction in *ICWC* is contrary to agency policy and arbitrary and capricious under the APA. (*Id.* at 6.)

At the hearing, defense counsel recognized that because Plaintiff has filed a T-visa application, he is a member of a class certified in the *ICWC* and would receive protections under the preliminary injunction. Accordingly, the Court finds that Plaintiff

---

[4] Exceptional circumstances where the "noncitizen poses national security concerns; or . . . [t]he noncitizen poses an articulable risk of death, violence, or physical harm to any person." Directive: 11005.3 Using a Victim Centered Approach with Noncitizen Victims ¶ 3.4, https://www.ice.gov/node/65012, last visited Nov. 12, 2026.

has demonstrated a likelihood of success on the merits on his APA claim regarding the T-visa application.

Second, Plaintiff argues that Defendants' failure to follow the fear-screening procedures violates the APA. (Dkt. No. 4 at 7-8.) In their response, Defendants do not dispute that they must comply with the reasonable fear procedures, and in fact, state that they are currently complying with the regulations. (Dkt. No. 7 at 4-5.) Here, again the Court concludes that Plaintiff has shown a likelihood of success on the merits on his APA claim concerning the reasonable fear process.

**D. Irreparable Harm**

Plaintiff contends he will suffer imminent and irreparable harm because ICE already attempted to remove Plaintiff by putting him on a deportation flight on the morning of October 30, 2026. (Dkt. No. 4 at 8.) Because he remains in ICE custody, there is a concrete risk that Plaintiff will be removed before the Court can adjudicate the merits of this case. (*Id.*) If removed, Plaintiff would be ineligible to obtain relief by way of a T-visa, he would be permanently separated from his partner of 20 years and their children and would prevent this Court from providing any effective relief. (*Id.* at 9.)

In response, Defendant argues that Plaintiff is not subject to immediate and irreparable injury, loss or damage because ICE has no date of removal for Plaintiff and will not schedule his removal until the reasonable fear process is complete or as stated at the hearing, after resolution of his T-visa application. (Dkt. No. 7 at 7.) In reply, Plaintiff argues that despite Defendants' assertions that Plaintiff will not be deported during these processes, they "run contrary to the Government's current policies regarding the fear process and expedited removal, and ICE enforcement climate." (Dkt. No. 11 at 5-6.) Based on Plaintiff's counsel's own anecdotal experience where a former client was removed after receiving a negative reasonable fear interview determination by an immigration judge and before she could file the petition for review with the Ninth Circuit, Plaintiff still "faces a non-speculative risk that he will suffer imminent and irreparable injury unless a TRO is granted." (*Id.* at 6.)

Even though government counsel asserts that Defendants will not deport Plaintiff until the reasonable fear process or the T-visa application process is complete, absent a TRO by the Court, there are no assurances that ICE agents will not deport Plaintiff during the pendency of his proceedings. Thus, the Court concludes that Plaintiff has demonstrated irreparable harm in light of the fact he was placed on a removal flight on October 31, 2026 and there is nothing to prevent ICE officers from placing him on another removal flight until the hearing on the preliminary injunction.

**E. Balance of the Equities and Public Interest**

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)).

Here, while Plaintiff would suffer irreparable injury as well as permanent separation from his family and severe emotional harm, there is no harm to the government from a short delay while these proceedings are pending.

In conclusion, the Court finds that Plaintiff has shown that he is entitled to a temporary restraining order maintaining the status quo and barring the government from deporting him.

**Conclusion**

Based on the above, the Court GRANTS Plaintiff's ex parte motion for temporary restraining order to preserve the status quo pending further briefing and a hearing on this matter. The parties agree to extend the TRO past the fourteen-day period allowed by the Federal Rule of Civil Procedure due to the Thanksgiving holiday. *See* Fed. R. Civ. P.

65(b)(2) ("The order expires at the time after entry--not to exceed 14 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.").

IT IS HEREBY ORDERED that

1. Defendants, including U.S. Immigration and Customs Enforcement, and their officers, agents, employees, and all persons acting in concert with them, are hereby enjoined from removing Plaintiff from the United States or otherwise effectuating his departure, pending further order of this Court;

2. Defendants shall maintain the status quo and refrain from taking any action intended to effectuate Plaintiff's removal during the effective period of this Order;

Defendants are ORDERED TO SHOW CAUSE on or before **November 23, 2026** why a preliminary injunction should not issue. Plaintiff shall a reply on or before **12:00 p.m. on December 1, 2026**. A hearing shall be held on **December 4, 2026 at 1:30 p.m.** in Courtroom 12A.

IT IS SO ORDERED.

Dated: November 13, 2026

Hon. Gonzalo P. Curiel
United States District Judge